JOURNAL ENTRY AND OPINION
Plaintiffs-appellants Tim McManamon and McManamon Co., LLC (referred to herein collectively as McManamon) appeal from the trial court's grant of summary judgment in favor of defendant-appellee HR Mason Contractors, Inc. (HR). On appeal, McManamon contends that the trial court erred in entering summary judgment on the breach of contract, quantum meruit and fraudulent inducement claims. For the reasons that follow, we affirm the judgment of the trial court.
On May 24, 1999, HR entered into a Broker's Agreement with McManamon 
Co. The Agreement delineates McManamon's duties to:
(a) secure a buyer for the Business; (2) assemble a packet of financial, historical and similar information concerning the Business and its sale, which shall be distributed to potential buyers; and (c) assist in all negotiations related to the sale of the Business. The terms in Section 2 of the Agreement require an ascertainable purchase price in order to determine the amount of the Broker's fee; which the parties agreed would be paid at closing. Under Section 4 of the Agreement, entitlement to the Broker's fee required a buyer to ultimately acquire the Business in addition to McManamon otherwise satisfying its duties.
By holographic interlineation, the parties inserted a provision whereby HR agreed to refer all potential buyers to McManamon. The terms further establish an exclusivity period of sixty (60) days during which HR agreed not to enter into any agreements for similar services with any person or entity.
McManamon presented HR with a Letter of Intent from an individual potentially interested in purchasing the Business for a sum of $1,800,000.00, subject to adjustment based on completion of due diligence and book value of Assets at closing. The Letter of Intent expressly provided that it was non-binding and reserved the potential buyer's right to terminate without any further obligation. There is no dispute that HR declined to entertain this overture to acquire its Business and advised McManamon of its decision not to sell the Business.
Each of McManamon's claims generate from the Broker's Agreement and/or the circumstances surrounding its execution and ultimate termination. On appeal, the three assigned errors challenge the propriety of the trial court's award of summary judgment. As such, they all require de novo review. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105; Zemcik v. La Pine Truck Sales Equipment (1998), 124 Ohio App.3d 581, 585. Summary judgment is appropriate where:
 (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274.
Zivich v. Mentor Soccer Club (1998), 82 Ohio St.3d 367, 369-70.
Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. Civ.R. 56(E); Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383,385. Affidavits must be based upon personal knowledge and must set forth such facts as would be admissible in evidence. Civ.R. 56(E). No evidence or stipulation may be considered except as stated in [Civ.R. 56]. Civ.R. 56(C).
We will address the errors in the order they were presented for our review.
 I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEE ON APPELLANTS' BREACH OF CONTRACT CLAIM.
Under this assignment of error, McManamon advances several issues. Primarily, McManamon contends that the Agreement is either unclear or ambiguous as to whether a commission was due in the absence of a consummated sale of the Business. On that basis they argue that an issue of fact exists precluding summary judgment. Conversely, the trial court found, and HR maintains, that the Agreement is clear and unambiguous in that it conditions the entitlement to the Broker's fee upon the sale of the Business.
The primary objective in contract interpretation is to give effect to the intent of the parties as expressed in the language they chose to employ in their agreement. Aultman Hosp. Assn. v. Community Mut. Ins. Co.(1989), 46 Ohio St.3d 51, 53. The basic tenets of contract law require us to give the common words that appear in the Agreement their ordinary meaning while construing the Agreement as a whole. Alexander v. Buckeye Pipeline Co. (1978), 53 Ohio St.2d 241, paragraph 2 of the syllabus; Foster Wheeler Enviresponse v. Franklin County Convention Facilities Authority (1997), 78 Ohio St.3d 353.
It is a well settled rule that:
 [i]n the construction of a contract courts should give effect, if possible, to every provision therein contained, and if one construction of a doubtful condition written in a contract would make that condition meaningless, and it is possible to give it another construction that would give it meaning and purpose, then the latter construction must obtain.
Foster, 78 Ohio St.3d at 362, quoting Farmers Natl. Bank v. Delaware Ins. Co. (1911), 83 Ohio St. 309, paragraph six of the syllabus.
Read as a whole, the Agreement is clear and unambiguous. The terms condition payment of the Broker's fee on the ultimate sale of the Business.[1] This is the only interpretation that affords purpose and meaning to all of the provisions of the Agreement. In other words, to construe the Agreement as McManamon urges would ignore explicit provisions of the Agreement. Namely, terms appearing in both Section 2 and Section 4 correlate the payment of the Broker's fee with the sale of the Business. We further find that this construction corresponds with, rather than contradicts, the terms of Section 1 that include among the Broker's various duties an obligation to assist in all negotiations related to the sale of the Business.[2]
Under an alternative issue raised under this assigned error, McManamon maintains that performance of the Broker's duties were rendered impossible by HR's decision not to sell its Business. By raising this issue, McManamon appears to recognize that it was unable to fulfill its contractual duty to assist in all negotiations related to the sale of the Business. McManamon urges us to find HR's decision tantamount to an anticipatory breach. It is axiomatic that an anticipatory breach could only arise from the anticipated breach of a parties' contractual promise or obligation. While the Agreement provides for the sale of HR's Business, there is no term within the Agreement that would compel HR to keep its Business on the market for any definitive period of time or that would require HR to necessarily sell the Business to any given potential buyer. Courts simply cannot rewrite agreements to contain additional or different terms or make a better contract than the parties made for themselves merely because its operation happens to work a hardship on one of the parties.[3] Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51, 55.
The disposition of the above issues, renders the remaining issues raised under this assignment of error moot. Accordingly, assignment of error I is overruled.
 II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEE ON APPELLANTS' QUANTUM MERUIT CLAIM.
McManamon urges, in the alternative to their breach of contract theory, that they are entitled to recover compensation in quasi-contract under the equitable doctrine of quantum meruit. However, where a valid contract exists between the parties, there can be no recovery under a theory of quantum meruit in the absence of fraud, bad faith or illegality. Aultman Hospital Asso. v. Community Mut. Ins. Co.,46 Ohio St.3d 51, 55, citing Ullmann v. May, (1947) 147 Ohio St. 468, paragraph 3 of the syllabus. Because we find that the trial court properly entered judgment on the fraud in the inducement claim, we affirm the trial court's judgment on the quantum meruit claim as well. The second assignment of error is overruled.
 III. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEE ON APPELLANTS' FRAUD IN THE INDUCEMENT OF A CONTRACT CLAIM.
The trial court granted summary judgment on the fraud in the inducement claim for failure to plead with sufficient particularity and for failure to provide any admissible evidentiary materials in support. Because we find the latter reason dispositive, an analysis of the complaint for particularity would be superfluous.
A claim for fraud in the inducement required McManamon to show that HR made a knowing, material misrepresentation with the intent of inducing reliance and that McManamon did, in fact, rely on the misrepresentation to their detriment. Beer v. Griffith (1980), 61 Ohio St.2d 119. To counter the trial court's finding that McManamon failed to submit any admissible evidence of fraud, they fall back on the allegations contained within the affidavit submitted in opposition to summary judgment. In response, HR maintains that those statements are inadmissible under Evid.R. 802 and constitute hearsay. McManamon cites to paragraphs 7 and 8 of the affidavit which provide as follows:
 7. HR, through its principal, James Ramey, used me and my company's services as a ploy against Mr. Ramey's brother, Frank Ramey, who owned a competing business and desired to purchase HR, in order to exort a higher price from him.
 8. Furthermore, Mr. Ramey was attempting to avoid a bona fide offer as to the value of the business as part of his divorce proceedings.
Tim McManamon, principal of McManamon Co., supplied this affidavit.
In accordance with Civ.R. 56(E) statements made in affidavits must be based upon personal knowledge and shall set forth facts as would be admissible in evidence. `Personal knowledge' is defined as `knowledge of the truth in regard to a particular fact or allegation, which is original, and does not depend on information or hearsay.' Brookwood Inn, Inc. v. City of Brook Park (June 1, 2000), Cuyahoga App. No. 76200 quoting Black's Law Dictionary (6 Ed. 1990) 604. This court has noted that `[a] motion for summary judgment cannot be supported by an affidavit that consists of hearsay or other inadmissible evidence.' Id. quoting Bernardo v. Anello (1988), 61 Ohio App.3d 453.
Because the affidavit that McManamon relies upon to overcome summary judgment contains hearsay or otherwise inadmissible evidence, it cannot suffice to overcome a well taken motion for summary judgment. Besides the affidavit, McManamon points to no other evidence beyond the mere allegations of the pleading to surmount the motion for summary judgment. Accordingly, this assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellants its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, P.J., and ANN DYKE, J., CONCUR.
[1] We find the case law cited by McManamon with regard to real, estate commissions distinguishable in that a breach of contract claim necessarily turns on the specific terms of each contract. Further, each of the subject cases are factually distinguishable because the respective brokers had evidence of a signed contract or of obtaining a buyer on the seller's terms or stipulated price. In this case, the record merely reflects a non-binding letter of intent presented on the terms of the potential buyer.
[2] Under a separate issue, McManamon admits that it could not complete this duty because HR ultimately decided not to sell the Business.
[3] The Agreement contains an integration clause which in clear and unambiguous terms provides that the Agreement represents the entire agreement between the Parties * * * and supercedes all prior contemporary verbal or written negotiations, arrangements, agreements and/or understandings regarding the subject matter herein. (Emphasis added).